# DECLARATION of LINDSAY WILLS

I, Special Agent Lindsay Wills, do hereby declare:

## Introduction and Agent Background

1. I am a Special Agent (SA) with Homeland Security Investigations (HSI) in Portland, Oregon, and have been so employed since 2007. I am currently assigned to a fraud group, and in that capacity investigate criminal financial activity such as currency structuring, money laundering, bank fraud, wire fraud, and intellectual property rights violations. I am a graduate of the Criminal Investigator Training Program and the HSI Special Agent Training Program at the Federal Law Enforcement Training Center. I have received training in interviewing techniques, arrest procedures, search warrant applications, the execution of searches and seizures, and various other criminal laws and procedures. I have attended training courses sponsored by HSI, the Department of Justice, the Department of Defense, and other law enforcement agencies, which focused on the investigation of money laundering violations and other financial crimes.

## Purpose of Declaration

2. This declaration is submitted in support of a Complaint *in rem* for forfeiture of $25,619.00 U.S. currency, which is connected to the prosecution and conviction of CATALIN BUNEA that took place in 2020. As set forth below, I have probable cause to believe, and I do believe, that CATALIN BUNEA committed violations of 18 U.S.C. § 1028A (Aggravated Identity Theft) and 18 U.S.C. § 1349 (Conspiracy to Commit Bank Fraud). Moreover, as set forth below, there is probable cause to believe, and I do believe, that the funds sought to be

forfeited constitute or are derived from proceeds traceable to a violation of 18 U.S.C. § 1349 and, as such, are subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).

3. This declaration is intended to show only that there is sufficient probable cause for the requested complaint and does not set forth all of my knowledge about this matter. The facts set forth in this declaration are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Summary of Investigation

4. Beginning in February 2019, the Vancouver Police Department (VPD) was investigating groups of individuals in Washington, Oregon, and California that were using skimming devices or skimmers. Suspects use these devices to steal financial account numbers and PIN combinations from ATMs and Point-of-Sale machines. Suspects then use the stolen account numbers and Personal Identification Numbers (PINs) to manufacture counterfeit access devices (cards) and make fraudulent withdrawals of cash and purchases. VPD gathered over 70 reports from victims reporting that money had been taken from their accounts without authorization at various ATMs even though the victims had possession of their debit cards. Several of these individuals stated they also noticed unauthorized charges made on these same accounts. Between individuals reporting their losses, and cards recovered by law enforcement through search warrants on vehicles and phones, law enforcement identified more than $254,089.79 in fraudulent attempts on these

individuals' accounts.

5. VPD located approximately 670 counterfeit access devices, including gift cards, that contained stolen debit card numbers with associated PINs on the back magnetic strip. In addition, VPD located cellular phones containing numerous debit card numbers with their associated PINs obtained from skimming devices or a debit and credit card reader/writer.

6. Law enforcement identified two of the individuals associated with this scheme as GEORGE ONICESCU (hereinafter, ONICESCU) and CATALIN BUNEA (hereinafter, BUNEA). ONICESCU and BUNEA are citizens of Romania. BUNEA entered the United States on a tourist visa. ONICESCU originally tried to enter the United States in August 2018 on a visa, in which he stated his purpose for entering the United States was for tourism/medical treatment. However, he was removed from his flight to the United States after officials discovered that he had previously been charged in France for credit card fraud. In an interview, he admitted to later entering the United States illegally at an unknown date around October or November 2018.

7. IQ Credit Union received reports of individuals walking up to ATMs and using multiple cards at a time making unauthorized withdrawals. On March 20, 2019, IQ Credit Union employees from the branch located at Vancouver Mall Dr., Vancouver, Washington, called 911 to report to VPD that there were currently two male subjects, one inside standing at an ATM and the other just outside the front doors standing at the ATM, using multiple cards and making these withdrawals or "cash outs" on customer accounts. The two individuals left that branch prior to police arrival. Once police arrived at the Vancouver Mall location, and after speaking with IQ Credit Union employees, VPD officers were alerted that the same

accounts were being used to make cash out withdrawals just down the road at a Walgreens kiosk ATM located at 6700 NE 63rd Street Vancouver, Washington.

8. VPD Officers responded and contacted one male, later identified as ONICESCU, who was sitting inside an Alfa Romeo vehicle in the parking lot. While ONICESCU was in VPD custody in a patrol car, VPD officers witnessed the employees from the IQ Credit Union positively identifying ONICESCU as being the individual who had previously been at the IQ Credit Union using members' card numbers to fraudulently obtain cash from their accounts. VPD Detective Brian Billingsley was able to positively identify ONICESCU as an individual caught on surveillance video in past transactions.

9. While searching ONICESCU's person incident to arrest, VPD officers found several receipts in his pockets connected to transactions at ATMs that inquired about account balances. These receipts were from Twin Star Credit Union and IQ Credit Union. These accounts on the receipts did not belong to ONICESCU. Inside the vehicle he was sitting in, law enforcement located two cellular phones in addition to the one cellular phone that was on ONICESCU's person at the time of arrest. VPD Detective Billingsley was also able to observe several receipts stored in the pocket of that door that contained the IQ Credit Union logo.

10. Based in part on the above information, on March 25, 2019, Detective Billingsley applied for and received a Washington state search warrant for the 2018 Alfa Romeo vehicle that ONICESCU was driving on the day of his arrest. Included in that warrant were the two cell phones found in the vehicle along with the cell phone found on ONICESCU's person at the time of his arrest. The purpose of the warrant was to search the vehicle and phones for evidence of crimes being committed by ONICESCU in Washington state, including: identity theft; unlawful

possession of payment instrument; and credit, payment cards-unlawful factoring of transactions; and theft in the second degree.

11. On March 26, 2019, at 10:27 a.m., VPD detectives executed the search warrant on the aforementioned vehicle, which at the time was located at the VPD West Precinct on Stapleton Road, in Vancouver, Washington. During the search of the vehicle, VPD detectives found over 100 gift cards. VPD Officers ran the gift cards through a card reading device that showed the back magnetic strip contained financial account information instead of the original gift card information, indicating that the cards were created for purposes of making withdrawals or "cash- outs." On the back of each of these cards were small stickers with four-digit numbers written on them, which appear to be the PINs to each account. These cards were located throughout the vehicle in hidden compartments inside the middle console and dashboard area. VPD detectives also located $5,360 in cash in the glove box and in other compartments hidden in the dashboard area.

12. On March 27, 2019, VPD Detective Zachary Ripp used the Cellbrite hardware/software suite to forensically image the phone in ONICESCU's possession at the time of his arrest and to image the phone which was collected from the middle console of the vehicle. These two phones belonged to ONICESCU and contained numerous debit cards numbers, photographs of ATMs, and location information for Lowe's and Chevron stores, which through the investigation were discovered to be locations where skimming devices had been placed.

13. Once these devices, as well as the iPhone from the driver side front seat of ONICESCU's vehicle, had been searched, law enforcement were able to identify other subjects involved in this group. One of these subjects identified through various methods, including

social media searches, was CATALIN BUNEA. BUNEA was seen on video surveillance on March 18, 2019, with ONICESCU, executing cash-out withdrawals from IQ Credit Union using stolen account information. BUNEA was also positively identified as a person placing a skimming device at a Lowe's store in Salem/Kaiser Oregon.

14. On April 9, 2019, Customs and Border Protection (CBP) in Portland, Oregon intercepted a package with DHL Airway Bill (AWB) #1866140522 that contained access devices, access device parts, phones, an iPad, clothes, and other miscellaneous items. The package was sent by BUNEA to an "A. ARDELEANU" at a Croydon, United Kingdom address. HSI Portland forwarded the DHL package bearing AWB #1866140522 to HSI London to conduct a controlled delivery of the package with United Kingdom law enforcement. On April 23, 2019, the City of London Police arrested Romanian national ANA ARDELEANU as she attempted to pick up the DHL package bearing AWB #1866140522.

15. On April 22, 2019, Chase Bank investigators contacted VPD Detective Ripp about several individuals who were again in the Vancouver, Washington, area using skimmed card information and making cash-out withdrawals. Detective Ripp received updated information that a subject had just completed transactions at one of the Chase Bank ATM locations at SE 1st Street and 192nd Ave in Vancouver, Washington. In response, VPD detectives set up mobile surveillance at various locations throughout the city. VPD Sgt. Jack Anderson located a subject matching the description of BUNEA walking up to the ATM at the Chase Bank on Mill Plain Blvd., Vancouver, Washington. That subject was taken into custody at that time and identified as CATALIN BUNEA. At the time he was taken into custody, BUNEA had three Vanilla Visa gift cards in his possession. On the back magnetic strip of these

cards there was skimmed card information belonging to other individuals' accounts. Similar to the other cards seized in this investigation, there were also stickers on the back of the cards, which contained what appear to be handwritten PINs to the corresponding card numbers and accounts.

16. During the aforementioned arrest, on April 22, 2019, BUNEA had in his possession a cell phone and $9.00 in cash. He was driving a 2017 Hyundai Accent, which had been rented from Hertz car rentals. The vehicle contained another cell phone inside. This vehicle was seized, and Detective Billingsley authored a state search warrant to search this vehicle. The purpose of the warrant was to search the vehicle and phones that were in the vehicle for the crimes of identity theft; unlawful possession of payment instrument; and credit, payment cards-unlawful factoring of transactions; and theft in the second degree.

17. On April 24, 2019, in the U.S. District Court for the District of Oregon, ONICESCU and BUNEA were indicted in a two-count indictment that charged one count of Counterfeit Access Device Fraud, in violation of 18 U.S.C § 1029 (a)(1) (both ONICESCU and BUNEA), and Illegal Possession of Device-Making Equipment, in violation of 18 U.S.C. § 1029(a)(4) (BUNEA only) (3:19-cr-00156-BR) and federal arrest warrants were issued.

18. On April 25, 2019, VPD Detective Billingsley received a phone call from the Kalama Police Department in regard to a hotel room at the Motel 6 on NE Frontage Rd. in Kalama, Washington. Officer Kaplan, Kalama PD, responded to Motel 6 management calling in about some suspicious abandoned property in Room #218. Motel 6 management had located a large amount of property and U.S currency inside this room while cleaning and taking inventory of the room items. The individual renting the room, BUNEA, did not check out on April 24,

2019, as expected and Motel 6 management could not contact him. Inside the room they had located a large bundle of cash wrapped inside a white net bag along with a black HP laptop computer, a gray Huawei tablet and a black LG Cellular phone. While taking inventory of items in the room they also located numerous gift cards wrapped in a t-shirt. The amount of cash was later determined to be $23,410, and there were over 200 gift cards found, with stickers on the back containing handwritten 4-digit numbers believed to be PINs.



///

///

**Declaration of Lindsay Wills**  EXHIBIT A   PAGE 8
Complaint *In Rem*
FOR FORFEITURE



19. VPD Detective Billingsley responded to the Kalama Police Department and retrieved these items from Officer Kaplan. The cards were checked through a credit card reader/writer, which revealed that on the back magnetic strips were various card numbers belonging to individuals and banks which had been obtained through skimming devices. Also located in the room was a credit card reader/writer that can be attached to a computer to read and write these numbers on the back of cards. Other items found in the room included a Romanian passport and other paperwork belonging to BUNEA.

20. On April 26, 2019, the Washington state search warrant was executed on BUNEA's vehicle and VPD Detectives located twenty-six Vanilla Visa gift cards hidden in the middle console driver-side area. Law enforcement also found $2,200 in cash hidden in the back of a seat.



21.     In the trunk area of the vehicle, VPD detectives located a red Macy's bag that contained numerous brand-new, still-in-the-package Vanilla Visa gift cards.  The twenty-six gift cards were checked through a card reader/writer by VPD Detective Ripp and were found to have card numbers belonging to various victims and banks on the back magnetic strip.  On stickers placed on the back of the card were handwritten four-digit numbers, which appeared to be the PINs to these respective accounts.

22.      On April 30, 2019, BUNEA signed an abandonment form with VPD for the total amount of $25,619 in U.S. currency, seized during the April 25, 2019, and April 26, 2019 search warrants, along with the cash located on BUNEA on April 22, 2019. Per VPD department policy, law enforcement deposited the $25,619 U.S. currency into a VPD controlled bank account after the seizures, and it was anticipated that this money would be forfeited by VPD.

23. Based on previous investigations and conversations with law enforcement, I know that subjects involved in this type of illegal activity keep in their possession United States currency from previous "cash outs" made with the skimmed card numbers. I know from the investigation that CATALIN BUNEA was not authorized to work in the United States nor was he working while in the United States. The investigation has shown that CATALIN BUNEA had no legitimate source of income. As such, I believe that funds being sought were directly derived from the crimes BUNEA has since pled guilty to.

24. On May 20, 2020, HSI SA Lindsay Wills, VPD Detective Ripp, and Assistant United States Attorney (AUSA) Quinn Harrington conducted a telephonic proffer with BUNEA and his attorney. BUNEA stated that he got involved with credit card skimming in Oregon in the end of January or beginning of February in 2019. ONICESCU taught BUNEA how to make credit cards and how to get money off of the cards at the bank. The compromised account information was sent to "Christian" in London to be decoded. Christian would then send back the card information which was copied onto a credit card with a computer program. BUNEA stated he made approximately $30,000 from skimming. BUNEA stated that Christian had asked him to stay in the United States after the arrest of ONICESCU until he could get another group of credit card skimmers to take over. Christian told BUNEA that he would send somebody to take care of everything and then he could keep the money he made and go home. Christian also asked BUNEA to send him a package that contained clothes, phones and skimming devices, which he did. BUNEA said that Christian's wife Ana was arrested when she picked up the package that he sent in her name.

25. On June 4, 2020, HSI SA Lindsay Wills, VPD Detective Ripp, and AUSA Quinn Harrington conducted a second telephonic proffer with BUNEA and his attorney. BUNEA stated that Christian is the boss and was in charge of the skimming operation. Christian lives in the United Kingdom. BUNEA stated that ONICESCU sent Christian the coded information from the skimming devices that had been placed on point-of-sale machines and ATMs for the purpose of decoding the information. Once Christian decoded the information, it was sent back to the United States to then be encoded on to cards to withdraw money. Christian offered to pay for BUNEA's flight home, food, and his hotel, as well as an undetermined amount of money if he would stay on and assist ONICESCU after his arrest. BUNEA agreed but Christian never wired any money to BUNEA. Christian asked BUNEA to send him a package that contained clothes and skimming devices, which he did. Approximately 7-10 days after he mailed the package, Christian told BUNEA to buy a laptop and that he would send him credit card information that BUNEA could use to "cash out." BUNEA agreed and started to "cash out" money using account numbers sent to him by Christian. BUNEA took the information received from Christian and wrote it on credit cards to get cash. He then cashed out 1-20 cards a day maximum over a period of 4-6 days until he was arrested. Christian told him which cities he should go to for the cash outs: Vancouver, Tacoma, and Seattle. BUNEA never ended up meeting the new team sent by Christian because he was arrested.

26. On July 23, 2019, a superseding indictment was filed against BUNEA, for violations of 18 U.S.C. § 1349 (Conspiracy to Commit Bank Fraud), 18 U.S.C. §§ 1029(a)(1), (c)(1)(a)(i) (Counterfeit Access Device Fraud), 18 U.S.C. §§ 1029(a)(4), (c)(1)(a)(ii) (Illegal Possession of Device Making Equipment), and 18 U.S.C. § 1344 (Bank Fraud).

27. On August 18, 2020, BUNEA pleaded guilty to 18 U.S.C. § 1028A (Aggravated Identity Theft), and 18 U.S.C. § 1349 (Conspiracy to Commit Bank Fraud). He was sentenced on December 14, 2020, to 48 months of imprisonment.

28. The $25,619 U.S. currency that is the subject of this complaint was never forfeited by VPD. VPD determined the funds were more appropriate for federal rather than state forfeiture due to BUNEA's federal conviction. HSI seized the funds from VPD pursuant to a seizure warrant signed by the Hon. Judge You, on May 16, 2022. HSI provided BUNEA with notice at his correctional facility of the federal seizure of these funds from VPD. Despite his conviction and the admissions made during his proffer, as well as the fact that his claim needed to be signed under penalty of perjury, BUNEA filed a claim with HSI for the funds, necessitating the filing of this civil forfeiture action.

**Conclusion**

29. Based on the foregoing, I have probable cause to believe, and I do believe, that BUNEA committed the violations of 18 U.S.C. § 1028A (Aggravated Identity Theft), and 18 U.S.C. § 1349 (Conspiracy to Commit Bank Fraud). Furthermore, as outlined above, there is probable cause to believe, and I do believe, that the $25,619 U.S. currency seized from CATALIN BUNEA constitutes or was derived from proceeds traceable to a violation of 18 U.S.C. § 1349 and, as such, is subject to civil forfeiture under 18 U.S.C. § 981(a)(1)(C).

42. I have presented this declaration to Assistant United States Attorney Katherine C. de Villiers who has advised me that in her opinion, the proposed complaint is supported by probable cause.

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. §1746.

Executed this 15th day of November 2022.

*/s/ Lindsay Wills*
LINDSAY WILLS
Special Agent
Homeland Security Investigations

**Declaration of Lindsay Wills** EXHIBIT A   PAGE 14
Complaint *In Rem*
FOR FORFEITURE